UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JARRET CARL SHAW                                                                    PLAINTIFF

VERSUS                                                      CIVIL ACTION NO. 1:18CV309-RHW

QUALITY CORRECTIONAL HEALTH CARE
et al                                                                                               DEFENDANTS

# MEMORANDUM OPINION & ORDER

Plaintiff Jarret Carl Shaw, proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint alleging denial of medical care at the Harrison County Adult Detention Center (HCADC). On August 14, 2018, Plaintiff was transferred from the Jackson County Adult Detention Center (JCADC) to HCADC. He alleges medical personnel employed by Defendant Quality Correctional Health Care (QCHC) failed to provide his prescribed blood pressure and heart medication from August 14 to August 28, 2018. He also alleges denial of medical treatment for severe chest pain during this time frame, which he claims was misdiagnosed as heartburn or acid reflux.

On August 28, 2018, Plaintiff suffered a cardiac event that rendered him unconscious. Jail employees and QCHC employees responded to Plaintiff's condition. Sergeant Trenton Freeman and QCHC nurses performed chest compressions and used a defibrillator on Plaintiff. According to Plaintiff, he was handcuffed while the defibrillator was being used. It left burn marks on his body and wrist and caused loss of feeling in his hands. Plaintiff was transported to Garden Park Medical Center and later transferred to Gulfport Memorial Hospital for treatment. Plaintiff believes he would not have experienced the cardiac event if jail employees had provided

him with his heart and blood pressure medications. Defendants have filed motions for summary judgment. Doc. [47] [50]. Plaintiff has not filed a response in opposition.

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion

for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Inadequate Medical Care**

Shaw argues he received inadequate medical care from August 14, 2018, through August 28, 2018. Specifically, he alleged that during this 15-day time frame, he did not receive prescribed medication and jail employees misdiagnosed his chest pain as heartburn or acid reflux. At the screening hearing, Shaw stated that after August 28th cardiac event, he "received excellent healthcare. I mean they have went above and beyond to make sure that I've had my medicines." Doc. [43] at 57. The medical records demonstrate no genuine issue of material fact on the question of whether Defendants were deliberately indifferent to Shaw's medical condition from August 14th through August 28th

To state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that defendants were deliberately indifferent to plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Constitution guarantee prisoners "only adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012) (emphasis in original), citing *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). A delay in medical care may, under certain circumstances,

state a claim for constitutionally inadequate medical care. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Id.* at 195. However, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Disagreements about whether an inmate should be referred to a specialist as part of ongoing treatment do not constitute deliberate indifference. *See Alfred v. Texas Dep't of Criminal Justice*, No. 03-40313, 2003 WL 22682118, at *1 (5th Cir. Nov.13, 2003); *Hickman v. Moya*, No. 98-50841, 1999 WL 346987, at *1 (5th Cir. May 21, 1999).

The medical records demonstrate Shaw in fact did receive constitutionally adequate medical care during the relevant 15-day time frame. Although Shaw alleges he did not receive prescribed medications during this interval, he testified that if the jail records state he started receiving high blood pressure medicine on a certain date, he would not dispute it. Doc. [43] at 21. On August 14, 2018, Shaw was booked into HCADC after being transferred from JCADC. Shortly after booking, a nurse from the medial unit performed a medical intake and obtained his medical history. As part of his medical history, the nurse asked about any on-going treatment and current medications. Shaw informed the nurse that he took Lisinopril for high blood pressure, as well as other medications for depression and pain. His heart was assessed as "normal", and he reported no history of heart disease. At intake, Shaw was not experiencing chest pain. At the screening hearing, he testified he had not experienced any type of cardiac event prior to August 28, 2018.

On August 14, 2018, HCADC sent a request to JCADC to verify Shaw's current medications. In the meantime, medical staff checked Shaw's blood pressure. On August 17,

2018, three days after his transfer, JCADC verified Shaw's current medications: Lisinopril (hypertension), Meloxicam (pain/anti-inflammatory), and Fluoxetine (anti-depressant). On August 18th, medical personnel administered Lisinopril, Fluoxetine, and Aspirin. Later that day, Shaw complained to a nurse that he was experiencing chest pain. Nurse Terri Robertson checked Shaw's blood pressure and took him to the medical unit for an EKG. She gave Shaw an antacid and educated him regarding signs of a heart attack and how to lower his blood pressure. Nurse Practitioner Nate Payne reviewed the EKG results and found them to be normal. Shaw was instructed to return to the clinic if his symptoms persist or worsen. Shaw continued to receive daily hypertension medication and anti-depressants. His blood pressure was checked again on August 19th and 20th. On August 22nd, Nurse Practitioner Payne reviewed Shaw's blood pressure flow chart and ordered an increase in dosage of his blood pressure medication, as well as daily blood pressure checks for seven days.

On August 28th, at approximately 4:25 AM, an emergency call was made to the medical unit to respond to a possible seizure of Shaw. Two nurses responded and found Shaw on the ground with "purplish skin tone". Shaw's respirations stopped and he had no palpable pulse. At this point, Sergeant Freeman and one of the nurses performed alternating chest compressions while another nurse provided Shaw breaths with an Ambu bag. At approximately 4:30 AM, a call was made requesting all available nurses and a stretcher. Two more nurses arrived along with several deputies. Sergeant Freeman and the nurses continued with alternating chest compressions. An oxygen tank was attached to the Ambu bag. Four shocks were administered using a defibrillator. After the fourth shock, Shaw's pulse returned. An ambulance arrived at approximately 4:50 AM and transported Shaw to the hospital.

At Memorial Hospital, cardiologist Dr. Shwan Jalal evaluated Shaw. He noted the cause of the cardiac event as "unspecified". Dr. Jalal also noted that the coronary angiography showed no significant signs of coronary disease. Three days after the cardiac event, Shaw was discharged from Memorial Hospital and returned to HCADC.

The medical records demonstrate that medical personnel were not deliberately indifferent to Shaw's serious medical condition from August 14th to August 28th. The medical records confirm that Shaw received an EKG and blood pressure medication in the days leading up to the cardiac event. In fact at one point, Nurse Practitioner Payne increased his blood pressure medication dosage and ordered daily checks of Shaw's blood pressure in response to Shaw's complaints of chest pain. Although Shaw complains his chest pain was misdiagnosed as heartburn, a misdiagnosis does not state a claim for deliberate indifference. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Based on the foregoing, the Court finds there is no genuine issue of material fact on the issue of deliberate indifference. Accordingly, Shaw's claim for inadequate medical care should be dismissed.

**Failure to Exhaust**

In the alternative, Defendants argue Plaintiff did not exhaust administrative remedies prior to filing his lawsuit. Exhaustion of administrative remedies through the prison grievance system is a jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983. *Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *See Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008). Exhaustion is mandatory for "all

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal". *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement. The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

Prior to filing his lawsuit, Shaw submitted two grievances related to medical treatment. HCADC maintains a grievance procedure outlined in the Inmate Handbook. Doc. [47-1] at 4-6. The formal grievance process includes three steps or levels that must be completed. *Id.* at 6. When Shaw was booked at HCADC, he was instructed where to find the Inmate Handbook, how to report a grievance, and how to use the kiosk. Doc. [43] at 31; Doc. [53-1] at 29. On August 31, 2018, he submitted a handwritten grievance addressing the treatment he received the morning of the cardiac event. Doc. [47-1] at 8. HCADC responded by informing Shaw "[i]f you wish to file a grievance you must do so on the kiosk." *Id.* HCADC requires all grievances to be filed "on the correct form that is provided on the kiosk". *Id.* at 6. Thus, Shaw's handwritten

7

grievance was not in the proper form. Moreover, he did not seek Level II or Level III review of the grievance. *Id.* at 2. Consequently, he failed to complete the grievance process.

On September 6, 2018, Shaw submitted a grievance electronically through the kiosk. Doc. [47-1] at 9. In this grievance, he stated he was experiencing chest pains and needed a follow up visit with a heart doctor. *Id.* This grievance does not address Shaw's medical care from August 14th to August 28th. Rather, it addresses post-cardiac event care; therefore, it does not exhaust the grievance process with respect to the claims in his lawsuit. In fact, in response jail officials told Shaw to "SUBMIT A MEDICAL REQUEST." *Id.* Nevertheless, Shaw did not seek Level II or Level III review of this grievance. *Id.* at 2. Consequently, he failed to complete the grievance process. Based on Shaw's failure to fully exhaust the prison's grievance process, he failed to exhaust administrative remedies prior to filing his lawsuit.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' [47] [50] Motions for Summary Judgment is GRANTED, and Plaintiff Jarret Carl Shaw's 42 U.S.C. § 1983 prisoner civil rights complaint is DISMISSED with prejudice as to all claims and all Defendants. In the alternative, Plaintiff's complaint is dismissed without prejudice for failing to exhaust administrative remedies.

SO ORDERED AND ADJUDGED, this the 28th day of February 2020.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE